**BUFFALO NATIONAL BANK, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 566–87C.

United States Claims Court.

Oct. 23, 1992.

William F. Mohrman, St. Paul, Minn., attorney of record, for plaintiff.

Donald E. Kinner, Commercial Litigation Branch, Civ.Div., Dept. of Justice, Washington, D.C., with whom were David M. Cohen and the Assistant Attorney General, attorneys of record, for defendant.

## OPINION

HORN, Judge.

This case is before the court on the defendant's motion for summary judgment pursuant to rule 56 of the rules of the United States Claims Court (RUSCC). Plaintiff, Buffalo National Bank (the Bank), brought this action under the Tucker Act jurisdiction of the court included in 28 U.S.C. § 1491 (1988). The complaint states that the case was filed as an action for breach of contract, and for failure to give notice "in violation of the Uniform Commercial Code as adopted in Minnesota." According to plaintiff, the case arises from a subordination agreement entered into by the plaintiff, Buffalo National Bank, and the United States Government, acting through the Farmer's Home Administration (FmHA) on April 30, 1982. In the

"amended complaint" filed in this court,[1] plaintiff does not specify a sum certain but requests damages in the actual amount equal to the unpaid principal and interest accrued of a loan, allegedly guaranteed by the FmHA, pursuant to the subordination agreement.

Defendant first filed a motion to dismiss and, thereafter, a "Motion to Supplement Appendix," accompanied by the Declaration of Robert Treadway, Assistant County Supervisor, Farmers Home Administration (FmHA). In an Order issued by the court, defendant's motion to dismiss was denied. The court noted that because a declaration was appended to defendant's motion, the motion should be converted into a motion for summary judgment, in accordance with RUSCC 12(b). Thereafter, the defendant filed a motion for summary judgment. The plaintiff filed its opposition to defendant's motion for summary judgment, claiming its entitlement to recovery, but arguing the existence of material issues of fact as a basis for denial of the motion for summary judgment. Defendant subsequently filed a reply to plaintiff's filing. After a thorough review of the pleadings and supporting documentation submitted by the parties, this court, hereby GRANTS the defendant's motion for summary judgment.

## FACTS

The material facts necessary to decide the instant motion for summary judgment appear to be undisputed. From 1979 to 1986, the FmHA financed, by means of several loans, the operation of Sleepy Hollow Farms, a dairy farm owned and operated as a partnership by Myron and Betty Johnson and their two sons Wayne and Bryan. These loans were secured with personal property of the Johnsons, including a 1980 John Deere 4440–D Tractor and a 1971 John Deere 4020–D Tractor. In the spring of 1982, the Johnsons attempted to obtain an additional loan from the FmHA to finance their spring planting needs. However, at that time, FmHA was unable to provide a loan because it had exhausted available loan funds. In order to assist the Johnsons in obtaining additional financing, the FmHA agreed to subordinate its interest in Sleepy Hollow Farms' collateral to another lender. The Johnsons, therefore, sought financing from plaintiff, Buffalo National Bank.

Accordingly, on April 30, 1982, Buffalo National Bank and the FmHA executed a written document titled "Subordination by the Government," which, by its terms, subordinated the FmHA's first priority lien on two tractors (a 1980 John Deere Tractor 4440–D and a 1971 John Deere Tractor 4020–D) in favor of the Bank's security interest. The document, signed by Ray Staloch, County Supervisor of the FmHA, provides in pertinent part:

### SUBORDINATION BY THE GOVERNMENT

THE United States of America acting through the administrator of the Farmers Home Administration (hereinafter called the "Government") is the owner and holder of the following-described instrument(s) executed by Johnson Sleepy Hollow Farms of Wright County, State of Minnesota: ... Financing Statement [dated] March 21, 1979 [filed] 3–21–79 [with Wright County Recorder] [File Number] 079222

AND Buffalo National Bank (hereinafter called the "Lender") has agreed to loan $20,000.00 to Johnson Sleepy Hollow Farms (hereinafter called the "Borrower") for the following purposes: Spring planting needs.

THEREFORE, in consideration of the Lender's agreement to make such loan to the Borrower, the Government hereby (1) consents for the Borrower to obtain said loan from the Lender for such purposes, and (2) agrees to and hereby subordinates in favor of the Lender and his successors and assigns its liens or security interests created or evidenced by the

---

1. Originally, plaintiff filed a complaint in the United States District Court for the District of Minnesota. Judge Paul Magnuson of the District Court granted defendant's motion to dismiss the three counts in the complaint filed in that court. By stipulation of the parties, two of the original claims were transferred to this court, pursuant to 28 U.S.C. § 1631.

above-described instrument(s) insofar as they cover the following described property:

1 John Deere Tractor,
Serial # 40467     4440–D–     Good 1980

1 John Deere Tractor,
Serial # 251837R     4020–D–     Good 1971

\*     \*     \*     \*     \*     \*

This subordination is limited to the amount actually loaned by the Lender to the Borrower for the foregoing purposes, but shall not exceed $20,000.00.

\*     \*     \*     \*     \*     \*

On May 5, 1982, five days after the execution of the subordination agreement, the Bank loaned the Johnsons $20,000.00, and the Johnsons granted to the Bank, as collateral, a security interest in the two John Deere tractors.[2] The Bank subsequently perfected its security interest.

With respect to the loans outstanding from FmHA, Sleepy Hollow Farms appears to have made timely payments to the FmHA from 1983 through mid–1986. Plaintiff, Buffalo Bank, asserts, however, that the two installments set forth in the subrogation agreement and payable to the Bank on November 5, 1983 and on May 5, 1984 were never made. Defendant does not appear to dispute this allegation in its pleadings.

In the Spring of 1984, after the departure of one of the sons, Wayne Johnson, from the partnership, the Johnsons decided to scale down the size of the Sleepy Hollow Farms. The Johnsons discussed the partial liquidation of farm inventory with Ray Staloch, the FmHA County Supervisor. On March 16, 1984, the Johnsons sold the 1980 John Deere Tractor, which also served as collateral for the Buffalo National Bank loan, to a farm equipment dealer from Kearney, Nebraska. As consideration for the tractor, the Johnsons received a check for $23,000.00, jointly payable to the Farm and the FmHA. The Johnsons deposited the check in the FmHA supervised bank account. The check was returned to the bank unpaid, on or around March 27, 1984. Shortly thereafter, the purchaser sold the tractor to another business in Oklahoma, after which the tractor was sold to a farmer in Texas. Before the Bank could proceed against the dealer on the check, or take other action, the dealer filed a petition for bankruptcy under Chapter 11 of the United States Code. Neither the tractor nor the proceeds from the sale have been recovered.

The plaintiff takes the position that the involvement of FmHA's Ray Staloch in the sale of the tractor and his failure to inform Buffalo Bank of the sale of the tractor and of the return of the dishonored check should allow plaintiff to recover against the United States in this case. Relying on deposition testimony of Myron Johnson, included in the record, plaintiff characterizes Ray Staloch, the FmHA county supervisor, as having actively and knowingly advised the Johnsons on how to proceed with the sale of farm inventory, including the tractor, which served as collateral for the loan from Buffalo National Bank. Plaintiff asserts in its memorandum in opposition to defendant's motion for summary judgment that although Mr. Staloch knew that the inventory being liquidated included the secured tractor, he, nevertheless, failed to provide notice to Buffalo Bank of the sale. Plaintiff also alleges that Mr. Staloch directed that the check be made payable jointly to Mr. Johnson and the FmHA. Furthermore, plaintiff asserts that Mr. Staloch directed Mr. Johnson to deposit the check in the FmHA supervised bank account.[3] Defendant, however, describes

---

**2.** Although the subordination agreement specifies two tractors as collateral, the parties have stipulated that the 1980 John Deere 4440–D tractor set forth in paragraph 4 of the complaint is the sole collateral which forms the subject of the instant dispute. The 1971 John Deere 4020–D tractor was sold at auction for $4,485.00, on September 17, 1986. The proceeds of that sale were received by the plaintiff on or about October 1, 1986.

**3.** Plaintiff, in its motion for summary judgment states that the supervised bank account was an account controlled by the FmHA. Plaintiff further asserts that pursuant to a deposit agreement, the Johnsons, as depositors, assigned the account and deposits to the FmHA. Thus, under the agreement the Johnsons were unable to withdraw funds from the account, unless they obtained a countersignature from an authorized representative of the Government.

Ray Staloch's conduct as merely making suggestions as to how to sell the tractor in a manner most beneficial to the Johnsons from a business standpoint. Defendant explicitly points out that no FmHA official requested or directed the sale of the tractor, or directed by what method, or to whom, the tractor was to be sold. Finally, the defendant notes that the FmHA never received any money from the sale of the tractor because the check received by the Johnsons was dishonored.

In its account of the events subsequent to the return of the dishonored check, defendant states that the FmHA district director informed the Buffalo National Bank that the FmHA would work with Sleepy Hollow Farms to have the borrowers pay the balance of the loan. Defendant further states that Mr. Johnson understood that it was his responsibility to collect the proceeds of the sale of the tractor or to retrieve the tractor. Defendant concedes that the Bank requested the FmHA to assist in recovering the balance of the loan by subordinating other FmHA liens on the borrowers equipment to the bank. Defendant notes, however, that upon review of its loans, the FmHA determined that it would not be sufficiently secured if it subordinated any additional liens to the Bank. The FmHA, therefore, denied Buffalo National Bank's request. Finally, the defendant states that the district director had no authority to bind the FmHA to any agreement which would indemnify Buffalo National Bank for the balance of the loan amount.

According to plaintiff, in the fall of 1984, following the return of the check, Larry Peterson and John Lundsten of the Buffalo National Bank met with Karen Thompson, an FmHA employee, and Robert McDowell, District Director of the FmHA, to discuss the misappropriation of the tractor. In its filing, plaintiff describes the meeting in some detail, noting that the Bank presented the Johnsons and the FmHA with two

alternatives for dealing with the Johnsons' default: (1) the Bank could proceed against the Johnsons under the security agreement and obtain and enforce a judgment against them, or (2) the Bank could obtain coverage from the FmHA. According to plaintiff, at the meeting the FmHA Director, Robert McDowell, admitted FmHA's responsibility, and promised that the FmHA would protect the bank from loss. In support of its position, plaintiff submitted the affidavit of Lawrence T. Peterson, Vice President of Buffalo National Bank. Plaintiff further asserts that in conjunction with its promises and with full knowledge of the delinquency of the loan, the FmHA required the Bank to use its best efforts to recover the collateral. Thus, the Bank unsuccessfully tried to recover the tractor by contacting attorneys and other banks, hiring an agency to repossess the tractor and flying Larry Peterson to Oklahoma to be deposed in an action to recover the tractor. Plaintiff states that the FmHA also paid past due interest on the loan on or about May 1, 1985.

In 1986, Sleepy Hollow Farms declared bankruptcy. The Bank has been unable to recover the misappropriated tractor. Therefore, Buffalo National Bank brought this action against the FmHA to recover damages, which it alleges resulted from the refusal of FmHA to pay monies to Buffalo National Bank, pursuant to the subordination agreement.

## DISCUSSION

■ Summary judgment in the United States Claims Court is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of the Rules of the United States Claims Court (RUSCC) is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[4] Both Rules provide that summary judgment "shall be rendered forth-

---

**4.** In general, the Rules of the United States Claims Court (RUSCC) are closely patterned upon the Federal Rules of Civil Procedure (Fed.R.Civ.P.). Therefore, precedent under the Fed.R.Civ.P. is relevant to interpreting the RUSCC,

including RUSCC 56(c). *See Imperial Van Lines Int'l, Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 70 (1989).

with if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RUSCC 56(c); Fed.R.Civ.P. 56(c). Rule 56(c) of the Rules of the United States Claims Court provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of showing that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Ass'n, Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991).

Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. As indicated above, any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court added an additional provision to the long standing summary judgment guidelines outlined above when it indicated that the initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged, if the moving party can show, alternatively, that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2553; *see also Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If the moving party makes this showing, the burden is placed on the nonmoving party to show that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Lima Surgical Assoc.*, 20 Cl.Ct. at 679. The logic behind this addition is simple. If, under no scenario, can the nonmoving party present the evidence necessary to support its case, then there should be no genuine need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Under Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. Generally, however, in order to prevail, the nonmoving

party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to show that a genuine issue for trial exists. *Celotex v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

In the instant case, the parties differ regarding their interpretation of the subordination agreement executed on April 30, 1982. The parties also disagree as to the extent and significance of the involvement by FmHA employees in the disposition of the assets at issue and representations regarding indemnification of the plaintiff. Plaintiff asserts that the language of the subordination agreement must be read in a manner that not only subordinates the FmHA's first priority security interest in the tractor to the Bank, but also imposes a duty upon the FmHA to protect the Bank from any loss on the loan. Defendant disagrees, and argues that nowhere in the subordination agreement, by which FmHA agrees to subordinate its first priority lien on two tractors in favor of the Bank's security interest, does the government promise to indemnify plaintiffs.

■ The meaning of the terms set forth in the subordination agreement is a question of contract interpretation, an issue of law that may be disposed of by summary judgment. *Government Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 812 n. 1 (Fed.Cir.1988); *Fortec Constr. v. United States*, 760 F.2d 1288, 1291 (Fed.Cir.1985); *See also Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 386, 351 F.2d 972, 974 (1965); *Cleek Aviation v. United States*, 19 Cl.Ct. 552, 554 (1990).

■ When interpreting the language of a contract, a court must give reasonable meaning to all parts of the agreement and not render any portion meaningless, or interpret any provision so as to create a conflict with other provisions of the contract. *Fortec Constr. v. United States*, 760 F.2d 1288, 1292 (Fed.Cir.1985); *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed.Cir.1983). Accordingly,

without rewriting or varying terms, *Hyman Constr. Co. v. United States*, 832 F.2d 574, 581 (Fed.Cir.1987); *Haehn Management Co. v. United States*, 15 Cl.Ct. 50, 59 (1988), contract language should be given the plain meaning that would be derived by a reasonably intelligent person acquainted with the contemporaneous circumstances. *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 389, 351 F.2d 972, 975 (1965); *Firestone Tire & Rubber Co. v. United States*, 195 Ct.Cl. 21, 30, 444 F.2d 547, 551 (1971); *John C. Grimberg Co. v. United States*, 7 Cl.Ct. 452, 456 (1985).

The document titled "Subordination by the Government" (Form USDA–FmHA, Form FmHA 460–2, _?_, 7–12–76)[5] is a simple, one page agreement. It is signed on behalf of FmHA by Ray Staloch, the FmHA County Supervisor, and dated April 30, 1982. It provides in pertinent part:

THEREFORE, in consideration of the Lender's agreement to make such loan to the Borrower, the Government hereby (1) consents for the Borrower to obtain said loan from the Lender for such purposes, and (2) agrees to and hereby subordinates in favor of the Lender and his successors and assigns its liens or security interests created or evidenced by the above-described instrument(s) insofar as they cover the following described property:

■ Absolutely no where in the document is there ever a reference to indemnification of plaintiff, Buffalo National Bank, by FmHA in the event that Sleepy Hollow Farms fails to satisfy its obligation to the Bank. By the subordination agreement, defendant did not assume the loan obligation; it merely agreed that the borrower could obtain a loan from the lender and agreed that the government would be second in line on secured property, should Sleepy Hollow Farms default on its obligation to Buffalo Bank. The subordination agreement allows the Bank to recover before the government on the proceeds of the sale of the two tractors in the event the

---

**5.** The blank represents an illegible entry before the 7–12–76 date on the photocopies of the "Subordination by the Government" agreement provided to the court in the amended complaint, as well as in both the plaintiff's and defendant's appendices.

borrower defaults on its loan from the Bank. This contract provides no recourse to property other than the tractors, or any basis for the Bank to recover assets beyond the two tractors. The subordination agreement contains absolutely no provision by which the government agrees to indemnify the Bank for any loss as a result of the loan. Although there may be some factual disputes regarding the involvement of Ray Staloch during the time period when the tractor at issue was sold, given the clear terms of the subordination agreement, any factual disputes in this case involve facts that are not material or outcome determinative. Thus, summary judgment with respect to the instant claim is appropriate. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ In addition, plaintiff asserts that the FmHA violated the Minnesota Uniform Commercial Code (U.C.C.) § 9–504 by failing to notify Buffalo Bank of the sale of the collateral by Sleepy Hollow Farms.[6] To the extent that plaintiff relies on state law as the grounds for relief, plaintiff fails to assert a cognizable claim within the jurisdiction of this federal court. Congress has defined the jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. § 1491 (1988), to include those claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act itself does not create a substantive right of recovery against the United States, for it is only a jurisdictional statute. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). A plaintiff must look beyond the Tucker Act and plead a money mandating predicate upon which to complete jurisdiction. *Ashgar v. United States*, 23 Cl.Ct. 226, 230–31 (1991); *Wes-*

*tech Corp. v. United States*, 20 Cl.Ct. 745, 748 (1990); *Millard v. United States*, 14 Cl.Ct. 55, 58 (1987). The Minnesota U.C.C. provision invoked by plaintiff is not such a money mandating statute.

■ Moreover, the applicable federal regulations are explicit that federal rather than state law is to apply in the conduct of FmHA operations.

Subpart C—Applicability of Federal Law
§ 1900.101 General.

This subpart provides Agency policy concerning:

(a) The applicability of Federal rather than State Law in the conduct of Farmers Home Administration (FmHA) operations, and

*       *       *       *       *       *

§ 1900.102 Applicable law.
Loans made by FmHA are authorized and executed pursuant to Federal programs adopted by Congress to achieve national purposes of the U.S. Government.

*       *       *       *       *       *

(d) Any person, corporation, or organization that applies for and receives any benefit or assistance from FmHA that offers any assurance or security upon which FmHA relies for the granting of such benefit or assistance, shall not be entitled to claim or assert any local immunity, privilege, or exemption to defeat the obligation such party incurred in obtaining or assuring such Federal benefit or assistance.

*       *       *       *       *       *

7 C.F.R. §§ 1900.101–102.

Nevertheless, even if this court were to apply the Minnesota codification of Uniform Commercial Code, section 336.9–504, cited to by plaintiff, when viewed in its entirety, the section simply does not provide any relief to the plaintiff under the

---

**6.** In support of this, plaintiff misquotes, out of context, a portion of the Minnesota codification of U.C.C. § 9–504(3):

  Minn.Stat. § 336.9–504(3) (U.C.C. § 9–504(3)) requires: reasonable notice of the time after which a private sale or other intended disposi-

tion is to be made shall be sent to any person who has a security interest in the collateral and who has duly filed a financing statement ... or who is known by the secured party to have a security interest in the collateral.

facts of this case. Section 336.9–504, titled "Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition" defines when a secured party may, following default, dispose of collateral, and the order in which the proceeds of the sale must be distributed. Minn.Stat. § 336.9–504(3) (1982).

Subsection 336.9–504(3), only a fragment of which, in a misquoted fashion, was included in plaintiff's brief, provides the appropriate methods by which the collateral may be sold.[7] In order for § 336.9–504(3) to be applicable, and impose a duty on a secured party to notify, the secured party must be selling, leasing or otherwise disposing of the collateral in satisfaction of a debt upon which the borrower liable to the secured party has defaulted, in accordance with § 336.9–504(1), (2). The FmHA was not the seller of the tractor. Plaintiff concedes that the owners of Sleepy Hollow Farms sold the tractor, for which they received as consideration a check for $23,-000.00. Because FmHA did not sell the tractor, the provision to which plaintiff selectively refers has no application in the instant case and defendant had no obligation to notify the Bank of the sale.

■ As an additional argument, plaintiff also asserts that pursuant to an implied in fact contract, based on the conduct of the government personnel, the FmHA is obligated to "cover" Buffalo National Bank. Courts have long recognized as enforceable implied in fact contracts. Indeed, the requirements for establishing an express or implied in fact contract are similar. *Mar-*

*shall v. United States,* 21 Cl.Ct. 497, 499 (1990); *Pacific Gas & Elec. Co. v. United States,* 3 Cl.Ct. 329, 338–39 (1983), *aff'd,* 738 F.2d 452 (Fed.Cir.1984). Plaintiff must show mutuality of intent, offer and acceptance, and actual authority on the part of the officer to bind the government in contract. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *United Food Servs. Inc. v. United States,* 19 Cl.Ct. 539, 548 (1990), *aff'd,* 928 F.2d 411 (Fed.Cir.1991); *Chavez v. United States,* 18 Cl.Ct. 540, 544–45 (1989); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 71–72 (1989); *Fincke v. United States,* 230 Ct.Cl. 233, 243–244, 675 F.2d 289, 295 (1982). An implied in fact contract is "founded upon a meeting of the minds, which although not embodied in an express contract, is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 426, 67 L.Ed. 816 (1923); *Travelers Indem. Co. v. United States,* 16 Cl.Ct. 142, 149 (1988).

■ Plaintiff, Buffalo National Bank, claims it entered into an implied in fact contract with the FmHA to indemnify plaintiff in return for the Bank's loan of additional monies to Sleepy Hollow Farms. In its filings with this court, however, plaintiff fails to come close to demonstrating the requisite mutual intent, offer or acceptance. The facts evident in the filings

---

7. 336.9–504

\* \* \* \* \* \*

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he

has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

\* \* \* \* \* \*

Uniform Commercial Code, Minn.Stat. § 336.9–504(3) (1982).

before the court, including the advice of Ray Staloch to the Johnsons, the meetings between Larry Peterson and John Lundson of the Bank and Karen Thompson and Robert McDowell of the FmHA, do not demonstrate the requisite elements of an enforceable, implied in fact contract.

Moreover, defendant asserts that Robert McDowell, the FmHA District Director, who allegedly promised to indemnify plaintiff, lacked the statutory authority to bind the government in contract. The United States Court of Appeals for the Federal Circuit and this court have consistently held that to recover for breach of an express or implied in fact contract with the United States, a plaintiff must show "that the officer whose conduct is relied upon had actual authority to bind the government in contract." *H.F. Allen Orchards v. United States,* 749 F.2d at 1575. *See also El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir.1989); *Ysasi v. Rivkind,* 856 F.2d 1520, 1525 (Fed.Cir. 1988); *Alexandria v. United States,* 737 F.2d 1022, 1027 (Fed.Cir.1984). Furthermore, the government is not bound by the acts of its agents which exceed that agent's authority, even though the agent believes himself to have such authority. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Edwards v. United States,* 22 Cl.Ct. 411, 421 (1991). Thus, anyone entering into a contract with the Government takes the risk of having accurately ascertained that the individual purporting to act for the Government acts within the bounds of his/her authority. *Federal Crop Ins. Corp v. Merrill,* 332 U.S. at 384, 68 S.Ct. at 3; *Essen Mall Properties v. United States,* 21 Cl.Ct. 430, 445 (1990).

■ The relevant scope of authority of the County Supervisor and the District Director is set forth in two provisions of the federal regulations, which, when read in conjunction, make it clear that neither the District Director, Robert McDowell, nor any of the other FmHA officers cited to by plaintiff, had authority to bind FmHA to guarantee payment of the Sleepy Hollow Farms loan to Buffalo National Bank:

**State, district and county office employees.**

The following officials and employees of the Farmers Home Administration, in accordance with applicable laws, and the regulations implementing these laws, for and on behalf of, and in the name of the United States of America or the Farmers Home Administration, are also severally authorized within the area of their respective jurisdictions to perform the acts specified in paragraphs (k) to (r), both inclusive, of § 1900.2: Chief, Farmer Programs/Specialist; Chief, Rural Housing/Specialist; Chief, Community Programs/Specialist; Chief, Business & Industry Specialist; Property Management/Specialist; each *District Director,* Assistant District Director, Loan Specialist General, *County (including Parish) Supervisor.*

.　　　.　　　.　　　.　　　.

7 C.F.R. § 1900.3 (1984) (emphasis added). Subsections (k) through (r) of section 1900.2, referenced above, in turn provide that the enumerated officials may:

(k) Execute and deliver or approve in writing, suspensions, releases or terminations of assignments of income, renewals, extensions, partial and full releases and satisfactions of security and personal or indemnity liability for indebtedness, waivers, *subordination agreements,* severance agreements, affidavits, acknowledgments, certificate of residence, evidence of consent, and other instruments or documents.

(*l*) Require and accept further or additional security.

(m) Accelerate and declare entire non-real estate indebtedness due and payable, and foreclose or request foreclosure of chattel security instruments by exercise of power of sale or otherwise.

(n) Bid for and purchase at any foreclosure or other sale, or otherwise acquire personal property pledged, mortgaged, conveyed, attached, or levied upon to collect indebtedness, and accept

title to any property so purchased or acquired.

(*o*) Take possession of, maintain, and operate security or acquired real or personal property or interests therein, sell or otherwise dispose of such personal property, and execute and deliver contracts, caretaker's agreements, leases, and other instruments in connection therewith, as appropriate.

(p) Execute proofs of loss on insurance contracts and endorse without recourse loss payment drafts and checks.

(q) Issue, publish and serve notices and other instruments.

(r) File or record instruments, whether separate instruments, or by making marginal entries, or by use of other methods permissible under State law.

7 C.F.R. § 1900.2(k)—1900.2(r) (1984) (emphasis added). Moreover, in addition to this general description of the scope of a District Director's authority, which does not include entering into indemnification agreements with Banks or guaranteeing loans provided by Banks to recipients of FmHA loans, section 1941.23(b)(1) of the federal regulations explicitly prohibits the type of agreement upon which plaintiff predicates his claim:

> FmHA employees will not guarantee repayment of advances from other credit sources, either personally or on behalf of applicants, borrowers, or FmHA.

7 C.F.R. 1941.23(b)(1) (1984). Therefore, this court concludes that even if the parties in this case had met the other requisite elements of mutuality of consent and offer and acceptance, and we do not so find, this claim would fail because Ray Staloch, the County Supervisor, and Robert McDowell, the District Director, lacked the requisite authority to bind the government to an agreement to indemnify Buffalo National Bank for its losses as a result of the Bank's loan to the Sleepy Hollow Farms.

## CONCLUSION

After a careful review of all the submissions and arguments presented by both parties, the court, hereby GRANTS the Defendant's Motion for Summary Judgment.

The clerk of the court is directed to enter judgment in accordance with this decision.

IT IS SO ORDERED.