**James MASON, Individually and as President of Sommers Construction Company, Inc., and Sommers Construction Company, Inc., a corporation,**

v.

**The UNITED STATES.**

**No. 116–77.**

United States Court of Claims.

Feb. 20, 1980.

Richard D. Horne, Mobile, Ala., atty. of record, for plaintiffs. Hess, Atchison & Stout, Mobile, Ala., of counsel.

Gerald L. Schrader, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before DAVIS, KASHIWA and SMITH, Judges.

## ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

The plaintiff, Sommers Construction Company,[1] seeks damages for the Government's alleged breach of contract. The case is before the court on plaintiff's motion for partial summary judgment and defendant's cross motion for summary judgment. For the reasons stated below, we hold for defendant.

Sommers Construction Company is a maintenance contracting firm whose principal place of business is Theodore, Alabama. During the years 1974, 1975, and 1976, the General Services Administration [G.S.A.], after competitive bidding, awarded eight "term contracts" to plaintiff. Each term contract was in effect for a one-year period, covered a fixed geographical area, and contained descriptions of a number of different construction type projects—painting, plastering, partition relocation, etc.—with a fixed price per project. Under each such contract, when plaintiff performed any of the described work within the one-year term and described geographical area, it would be paid this predetermined price.

All eight term contracts contained a provision entitled "Section 3, Special Conditions." This was a part of the bid specifications sent to all prospective bidders on these contracts and was incorporated by reference and became a part of each contract awarded to plaintiff. Section 3, Special Conditions, provided in relevant part as follows:

---

1. These contracts were all entered into between Sommers Construction Company and the General Services Administration [G.S.A.], and not between James Mason and the G.S.A. James Mason was at all relevant times the president of Sommers. This was his only connection with this action. Although this case is styled *James Mason, etc., et al. v. United States*, it is clear that Sommers Construction Company is the true plaintiff. All references to "plaintiff" will be to Sommers Construction Company.

## 3-1 GENERAL

a. Purpose of Contract: The U.S. Government proposes to enter into a term contract whereby partitions, doors, hardware, painting, electrical work and other necessary materials, labor and equipment for a complete installation will be furnished and installed by a single contractor at the unit price established * * * in quantities and heights as may be required from time to time during the term of the contract * * *. The work ordered under this contract will be performed in any or all Government-owned and Government-leased buildings within [a specified geographical area].[2]

\* \* \* \* \* \*

## 3-3 QUANTITIES OF WORK

a. Bidders are hereby cautioned that quantities shown and listed on the bid form as the bid evaluation estimated quantities are not guaranteed minimums or maximums and in no way have any connection with any required quantities or intend any scope of work. These quantities are for bid evaluation purposes only.[3]

b. The minimum quantity of work which will be required under this contract * * * will not total less than five thousand dollars ($5,000).[4]

\* \* \* \* \* \*

Two of the eight contracts covered the area in and around Nashville, Tennessee. These contained, in Section 3, Special Conditions, an additional clause, hereinafter referred to as the "Nashville clause," which stated that "Any award under this [contract] will not prohibit or restrict the Government from having any work items performed by Government employees or by others." None of plaintiff's other contracts contained this language.

During the life of, and within the geographical area covered by, each contract, defendant had others perform work similar

or identical to that described in plaintiff's contracts. Defendant also ordered at least $5,000 of work under each of these term contracts.

Plaintiff places primary emphasis on the Purpose of Contract clause. In its view, while the Government had no obligation to have any of the described work performed, if the Government decided to have any of such work done in "any or all Government-owned and Government-leased buildings" within the applicable areas of the respective contracts, this clause gave plaintiff, as the "single contractor," the exclusive right to perform this work. That is, a single contractor was to do all this work in all these buildings. Plaintiff further argues that the Guaranteed Minimum Quantity clause was only included to ensure mutuality of obligation, and that its presence in the contracts is totally consistent with the exclusive right created by the Purpose of Contract clause. In addition, in plaintiff's view, the Nashville clause when read in conjunction with the Purpose of Contract clause creates an ambiguity which, since the Government drafted the contracts, should be construed against the defendant under the doctrine of *contra proferentem,* leaving intact the exclusive performance rights created by the Purpose of Contract clauses in the Nashville contracts.

Plaintiff, accordingly, contends that with respect to each of its contracts, it had the exclusive contractual right to perform the work which defendant in fact awarded to others. The Government has thus breached each term contract, entitling plaintiff to damages. Plaintiff also asserts that it had a corresponding legal obligation to perform all such work. Plaintiff, however, refuses to characterize its contracts as requirements contracts.

A careful examination of plaintiff's argument convinces us that, stripped to its legal essentials, plaintiff does contend it held re-

2. Hereinafter referred to as the "Purpose of Contract" clause.

3. Hereinafter referred to as the "Bid Evaluation" clause.

4. Hereinafter referred to as the "Guaranteed Minimum Quantity" clause.

quirements contracts. We must ignore the label plaintiff attaches to its contracts and see what legal rights it claims it received.

■ The projects enumerated in these contracts were all construction type work. Such work cannot be performed now, then stored away for future use. For the Government to order more work than it needed done would therefore make no sense, and in interpreting a contract, we should keep in mind that "[t]he Government is no more devoid of minimal business sense than [are] contractors." *Franklin Co. v. United States*, 381 F.2d 416, 419, 180 Ct.Cl. 666, 672 (1967). Logically then, regardless of who actually performed the described work, the Government would order such work done only if it needed it done. Plaintiff's argument that for the one-year term of each contract it had the exclusive right and the legal obligation to fill all of defendant's orders for work of the type described in its contracts thus reduces to an argument that during the life of each contract it had the exclusive right and legal obligation to satisfy defendant's needs for such work. This, however, is the definition of a requirements contract. As we said in *Media Press, Inc. v. United States*, "[a] requirements contract has been defined as a contract in which the purchaser agrees to buy all of its needs of a specified material from a particular supplier, and the supplier agrees, in turn, to fill all of the purchaser's needs during the period of the contract." 566 F.2d 1192, 215 Ct.Cl. 985, 986 (1977).

■ Under these contracts, plaintiff had to provide the services at a predetermined, fixed price. This does not undercut our characterization of plaintiff's argument—

fixed price terms are totally consistent with requirements contracts. *Shader Contractors, Inc. v. United States*, 276 F.2d 1, 4, 149 Ct.Cl. 535, 540 (1960).

■ Defendant insists that, with respect to each contract, all the clauses in Section 3, Special Conditions, should be read as a whole, and when so viewed, these are all indefinite quantities contracts with a $5,000 minimum purchase amount per contract. Thus, its only obligation to plaintiff was to order at least $5,000 of work under each contract.[5] Having done so, it has fully performed and its award of work to others is not a breach of contract.

Consistent with this, defendant interprets the Purpose of Contract clause as speaking to the plaintiff's obligations, not the Government's. It describes what the contractor's capabilities shall be and where he may be required to perform his services— not what the Government is obligated to order. The first sentence of this clause and the reference therein to a "single contractor" make clear that with respect to any one work project, the contractor awarded the term contract must itself perform all the tasks necessary for a complete installation. It would not be allowed to subcontract some of the work to others and would therefore be the "single contractor" involved in the project. The second sentence defined only the geographical area within which the contractor may be required to perform the work to be ordered. The defendant, accordingly, finds nothing in this clause which would give the recipient of a term contract the exclusive right within the geographical area of its contract to perform all the described work.

*Sutherland & Co. v. United States*, 262 U.S. 489, 493, 43 S.Ct. 592, 594, 67 L.Ed. 1086 (1923), 1A. Corbin, Contracts § 157 (1963 & Supp.1971).

To make such contract enforceable, the buyer must agree to purchase from the seller at least a guaranteed minimum quantity of goods or services. If the contract contains such a minimum quantity clause, the buyer is required to purchase at least this minimum amount, but this is the extent of his legal obligation. He can purchase more if he chooses to but is under no obligation to do so.

---

**5.** An indefinite quantities contract is a contract under which the buyer agrees to purchase and the seller agrees to supply whatever quantity of goods the buyer chooses to purchase from the seller. It differs from a requirements contract in that under a requirements contract the buyer agrees to purchase all his requirements from the seller. Under an indefinite quantities contract, even if the buyer has requirements, he is not obligated to purchase from the seller. In an indefinite quantities contract, without more, the buyer's promise is illusory and the contract unenforceable against the seller. *Willard,*

Resolution of this controversy depends upon a determination of the respective rights conferred by these term contracts on plaintiff and defendant. If these are requirements contracts, then within the one-year time frame and geographical area of each contract, whenever defendant chose to order work of the types described in plaintiff's contracts, it was legally bound to order all such work from plaintiff. The Government admittedly failing to do so, it would be in breach of contract. If these are indefinite quantities contracts, then defendant was only obligated to order the guaranteed minimum amount from plaintiff—here $5,000 per contract—and could order all additional work from others. The Government having ordered at least this amount under each contract, its awarding additional work to other contractors would not be a breach.

Our examination of the contracts convinces us that in deciding whether these are requirements or indefinite quantities contracts, the only relevant contractual terms are those contained in our above quotation from Section 3, Special Conditions. We must, therefore, see whether this language is supportive of the former or the latter type of contract.

These term contracts provided for plaintiff's furnishing of services to defendant. Generally speaking, where services are to be provided to the Government, the contract must be one of three possible types—definite quantity, requirements, or indefinite quantity. Since the Bid Evaluation clauses clearly indicated that no fixed, definite quantity was to be ordered, plaintiff's contracts are not definite quantity contracts. They must, therefore, be one of the other two types.

Ignoring for a moment the Purpose of Contract clause, and looking at just the Bid Evaluation and Guaranteed Minimum Quantity clauses, and also the Nashville clause in the case of the two contracts covering Nashville, these all appear to be indefinite quantities contracts. There is nothing in these clauses which could be supportive of requirements contracts. The Bid Evaluation clause indicated that while the Government might order work from plaintiff, there was no assurance that it would do so. This clause was an illusory promise on the Government's part—it promised to order whatever amount of services it chose to. At the same time, the Guaranteed Minimum Quantity clause assured a minimum purchase amount. The two elements of an indefinite quantities contract are thus present—a guaranteed minimum purchase amount ensuring mutuality of obligation to what would otherwise be an unenforceable illusory promise. *See supra* note 5. The Nashville clauses, by stating that plaintiff did not have the exclusive right to the work, make this even clearer in the two Nashville contracts.

The Purpose of Contract clause, being the only other relevant clause, is therefore dispositive of this case. The interpretation we give to it determines whether plaintiff held requirements or indefinite quantities contracts. Only if we adopt plaintiff's interpretation is there any language supportive of a requirements contract. If we follow defendant's position, the Purpose of Contract clause defines plaintiff's obligations under an indefinite quantities contract. Adopting this latter interpretation means all the relevant language is indicative of an indefinite quantities contract with a $5,000 minimum purchase amount, and we would so hold.

On its face, and viewing it in isolation from the remainder of Section 3, Special Conditions, the Purpose of Contract clause is susceptible to either interpretation. If we were to interpret it without reference to the remainder of the contract, since the defendant drafted these contracts, we would have to resolve the ambiguity in plaintiff's favor. However, in interpreting this clause, we do not look at it in isolation from the remainder of the clauses in Section 3, Special Conditions. In giving meaning to the Purpose of Contract clause, all the component clauses making up Section 3, Special Conditions, are to be interpreted as a whole. *Bishop Engineering Co. v. United States,* 180 Ct.Cl. 411, 415 (1967); *Hol-Gar*

*Manufacturing Corp. v. United States,* 351 F.2d 972, 169 Ct.Cl. 384 (1965). If possible, all the clauses should also be interpreted harmoniously. "[A]n interpretation which gives a reasonable meaning to all [the clauses] will be preferred to one which leaves [one or more clauses] useless, * * * meaningless or superfluous; nor should any [clause] be construed as being in conflict with another unless no other reasonable interpretation is possible." *Bishop Engineering Co. v. United States,* 180 Ct.Cl. at 416; *Martin Lane Co. v. United States,* 432 F.2d 1013, 193 Ct.Cl. 203 (1970); *Hol-Gar Manufacturing Corp. v. United States, supra.*

■ Looking first to the two contracts covering Nashville, Tennessee, it is evident that the Purpose of Contract clause should be read as the Government contends. These contracts had an additional clause, the Nashville clause, which provided that awarding the contract to Sommers "will not prohibit or restrict the Government from having any work items performed by Government employees or by others." Contrary to plaintiff's protestations, there is not simply a mere ambiguity between these two clauses.

Reduced to its legal essentials, plaintiff is arguing that the Purpose of Contract clause makes these Nashville contracts requirements contracts. If they were requirements contracts, plaintiff would have the exclusive right to perform all these work items—the Government would not be allowed to either itself perform the work or have other contractors do so. Giving the language of the Nashville clause its plain meaning, plaintiff's interpretation of the Purpose of Contract clause results in a clear conflict between these clauses. If an alternative, reasonable reading of the Purpose of Contract clause will obviate the conflict, we should not adopt plaintiff's interpretation.

The Government interprets the Purpose of Contract clause consistent with these being indefinite quantities contracts. If they are, then subject to the $5,000 minimum purchase amount, the Government would be free to have itself or other contractors do this work. The Purpose of Contract clause would thus be perfectly compatible with the Nashville clause. The Government's interpretation being a reasonable one, we adopt it so as to read these clauses harmoniously.[6]

As indicated in our earlier discussion, if in any of these term contracts we follow defendant's interpretation of the Purpose of Contract clause, the result is an indefinite quantities contract with a $5,000 minimum purchase amount. Since we do adopt this position with respect to the two Nashville contracts, these two are indefinite quantities contracts.

In interpreting the other six contracts, in addition to looking to Section 3, Special Conditions, plaintiff would also have us look to three other facts—absence of the Nashville clause, events occurring subsequent to institution of this litigation, and an opinion of G.S.A.'s legal office. This we decline to do.[7] In interpreting the Purpose of Con-

6. Reading these two clauses harmoniously means that the Nashville clause when read in conjunction with the Purpose of Contract clause does not create an ambiguity. There is, therefore, no reason for us to resort to the doctrine of *contra proferentem.*

7. None of these six contracts contained the Nashville clause. This could mean one of two possible things—either the Government felt it was so clear that the Purpose of Contract clause created an indefinite quantities contract that the Nashville clause was unnecessary; or it realized that in the absence of the Nashville clause, the Purpose of Contract clause would be interpreted as creating a requirements contract, and intending to create such a contract, deliberately omitted the Nashville clause. Either inference being equally plausible, and the parties having furnished nothing to aid us in deciding which is more reasonable, we find it impossible to decide. In interpreting these term contracts, we can therefore attach no importance to the absence of the Nashville clause.

In all new term contracts awarded subsequent to the institution of this lawsuit, the Government modified the Purpose of Contract clause and included language similar to that in the Nashville clause. This change made clear that these were indefinite quantities contracts. Plaintiff argues that this subsequent action was an admission by the Government that plaintiff's six contracts not containing the Nashville clause were requirements contracts. This con-

tract clause in these contracts, we look solely to Section 3, Special Conditions.

■ In a requirements contract, the seller's promise to satisfy the buyer's requirements and the buyer's promise to purchase all its requirements from the seller ensure mutuality of obligation. 1A. Corbin, Contracts § 156 (1963 & Supp.1971). Without more, such a contract is fully enforceable by buyer and seller. A guaranteed minimum purchase amount would add nothing to enforceability of a requirements contract. A guaranteed minimum purchase amount is, however, essential to there being an enforceable indefinite quantities contract. *See supra* note 5.

A contractor incurs a certain amount of expense in preparing a bid on a Government contract. A reasonable contractor would, therefore, not submit a bid unless, assuming he was awarded the contract, be expected to receive enough work under it to recover his bid expenses. Assuming, as we must, that the Government possesses at least minimal business sense, *Franklin Co. v. United States, supra,* it must realize that to induce people to place bids, it would have to ensure that the successful bidder receives at least this level of work. Logically then, since it wants to receive bids, we can assume that in all its contracts the Government takes steps to ensure this minimal amount of work.

These term contracts each covered a fairly large geographical area and a large number of construction projects. If these were requirements contracts, the recipient of each of these contracts would be given the exclusive right within this area to perform all the described work. In view of the large amount of work which the Government needed done,[8] such contractor, even in the absence of a guaranteed minimum amount of work, would be assured of enough work to induce it to bid. However, if these were indefinite quantities contracts, to ensure that bids would be received, a guaranteed minimum purchase amount would be needed. This is because, wholly apart from the enforceability issue, in the absence of a guaranteed minimum purchase amount, in an indefinite quantities contract, the Government is promising to purchase no minimum level of work. Nor could a reasonable contractor anticipate that the defendant would nevertheless purchase some minimum amount. The Government would be free to purchase whatever amount, if any, which it chose. In light of this, a reasonable contractor would have no assurance of receiving enough work to allow recovery of its bid expenses. A guaranteed minimum quantities clause, by assuring a

tention has no merit. Subsequent revision or clarification of contract language which has given rise to disagreement is only wise, and does not constitute an admission. *See Martin Lane Co. v. United States, supra.* Nor can this change aid us in interpreting the Purpose of Contract clauses in these six contracts. "It is well settled that only actions * * * which occur before a controversy arises are relevant in determining and interpreting the meaning of a contract." *Sea-Land Service v. United States,* 553 F.2d 651, 658, 213 Ct.Cl. 555, 566 (1977), cert. denied, 434 U.S. 1012, 98 S.Ct. 724, 54 L.Ed.2d 755 (1978); *see Liles Construction Co. v. United States,* 455 F.2d 527, 197 Ct.Cl. 164 (1972).

One of these six contracts covered the Federal Law Enforcement Training Center, Brunswick, Georgia. During the term of this contract, defendant was going to award similar or identical work to another contractor. Plaintiff protested and the Government requested an opinion from G.S.A. legal counsel as to whether plaintiff had the exclusive right to the work.

Subsequent to receipt of this opinion letter, the work was awarded to plaintiff. On our reading of it, the author of the letter did not decide whether plaintiff had the exclusive right to the work. All he did was articulate plaintiff's and defendant's respective arguments, without deciding which was correct. The letter did, however, conclude that since, if plaintiff pressed its claim, work on the project would be delayed, it should be awarded the work. This desire to not delay completion of the project could account for plaintiff being awarded the work. Since the letter did not resolve the question here in issue, it sheds no light on the proper interpretation of the Purpose of Contract clause contained in this one contract.

8. That a large quantity of work was anticipated by the Government is indicated by the fact that, notwithstanding defendant awarded work to other contractors, plaintiff received substantially in excess of $20,000 of work per contract, and received close to a total of $1,000,000 under some of its contracts.

certain amount of business, would allow recovery of these expenses and thereby induce contractors to place bids.

All six of these contracts contained a Guaranteed Minimum Quantity clause. Such a clause can serve only two possible purposes—to ensure mutuality of obligation, and make the contract enforceable by both parties to it; and, by promising a minimal level of work, to allow recovery of bid expenses and thus induce contractors to bid on the contract.

If we adopt plaintiff's interpretation of the Purpose of Contract clause, these six contracts will all be requirements contracts. If they are, the Guaranteed Minimum Quantity clause will be rendered superfluous. Both purposes to be served by this clause will be fully accomplished even if it were entirely omitted from the contract.

The Guaranteed Minimum Quantity clause would be given legal meaning and serve a purpose only if these are indefinite quantities contracts. If they are, then both purposes of this clause would be accomplished by including it in the contracts. If we adopt the defendant's interpretation of the Purpose of Contract clause, then we would hold these to be indefinite quantities contracts.

█ The Government's interpretation of the Purpose of Contract clause is a reasonable one. Only by adopting it can we give meaning to the inclusion in these contracts of the Guaranteed Minimum Quantity clause. We thus agree with the Government's interpretation of the Purpose of

Contract clause. *Bishop Engineering Co. v. United States, supra; Martin Lane Co. v. United States, supra.* By doing so, all the clauses in Section 3, Special Conditions, when read together are indicative of these six being indefinite quantities contracts, with a $5,000 minimum purchase amount each. We, accordingly, so hold. Having already so interpreted the two Nashville contracts, this means all eight of plaintiff's contracts are of this type.

We, accordingly, agree with the Government's interpretation of all eight of these term contracts. The Purpose of Contract clause defines the obligations of the contractor, not those of the Government. The Bid Evaluation and Guaranteed Minimum Quantity clauses read together limit defendant's obligation to the ordering of $5,000 of services per contract. The Government having done so, its awarding of work to other contractors was not a breach of any of Sommers' contracts.

## CONCLUSION

For the foregoing reasons, we grant defendant's cross motion for summary judgment and deny plaintiff's motion for partial summary judgment. The petition is dismissed.