**RICE LAKE CONTRACTING, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 90–352C.

United States Court of Federal Claims.

April 7, 1995.

146

Sam Zalman Gdanski, Spring Valley, NY, for plaintiff.

Alan M. Rotach, and Susan P. McNeill, Lt. Col., Trial Attys., Contract Litigation Div., Dept. of the Air Force, Washington, DC, for defendant.

## OPINION

HORN, Judge.

This case comes before the court on the defendant's motion for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RUSCFC).[1] Plaintiff, Rice Lake Contracting, Inc. ("Rice Lake") filed this action challenging a final decision of the contracting officer, which denied three out of four of the plaintiff's claims for an equitable adjustment to a service contract with the United States Air Force, and sustained plaintiff's claim for $3,759.20 for "additional footages." The contract at issue was entered into for the purposes of the maintenance of hardwood floors and painting of interior walls in military family housing at K.I. Sawyer Air Force base. In plaintiff's initial claim for costs brought before the contracting officer, plaintiff claimed costs totalling $55,623.65 for damages, resulting from four alleged categories of errors by defendant, as follows: (1) errors in footage, $3,759.20; (2) materials left on hand, $4,199.32; (3) miscalculation of interior paint, $26,660.20; and (4) miscalculation of maintenance of wood floors $21,004.93. In the contracting officer's final decision, plaintiff only was awarded damages pursuant to the first category, error in footage, totalling $3,759.20. The contracting officer stated:

Your referenced claim, with the exception of the issue of additional footage, is hereby denied in its entirety. Contrariwise, your claim concerning additional footages in the stated amount of $3,759.20 is hereby sustained.

Plaintiff's one page, plus one line, complaint filed in this court, and its limited, vague response in opposition to defendant's motion for summary judgment, alleges that the government violated its contract with plaintiff by failing to order the full complement of services pursuant to the contract. Plaintiff Rice Lake, therefore, alleges that it is entitled to damages resulting from the failure of the government to order the full complement of services under the contract in the amount of $55,623.65.[2]

Although plaintiff's complaint fails to set forth any statutory basis for jurisdiction, the record before the court reflects that the complaint sets forth an appeal from a contracting officer's final decision, pursuant to 41 U.S.C. §§ 605(a)–605(c) (1988), and that, therefore, jurisdiction in this court is proper pursuant to the Tucker Act, 28 U.S.C. § 1491 (1988). Moreover, defendant has not contested the court's jurisdiction in the above-captioned case.

In response to plaintiff's complaint, defendant filed an answer and, subsequently, a motion for summary judgment, accompanied by proposed findings of uncontroverted facts and an appendix of relevant documents.[3] In response, plaintiff filed an extremely brief, and not very helpful, opposition to defendant's motion, which fails to address most of the arguments asserted by defendant and fails to clearly articulate plaintiff's position

1. Following enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, the United States Claims Court was renamed the United States Court of Federal Claims. In accordance with General Order 33 issued by the United States Court of Federal Claims, the court adopted the rules of the United States Claims Court. The substance of the rules of the court, discussed herein, is unaffected by the legislation, other than with respect to the name change of the court and, therefore, the name change of the rules. However, General Order 33 also indicates that if there is a conflict between the new statute and the rules, the statute will control.

2. The $55,623.65 claim for damages included in the complaint in this court is the same dollar amount claimed at the administrative level, and fails to acknowledge that plaintiff had already been paid $3,759.20 for error in footage.

3. Defendant originally filed a motion to dismiss or in the alternative a motion for summary judgment. Defendant later filed a motion to correct the caption of its motion so that the title now reads "Defendant's Motion for Summary Judgment."

on the relevant issues before this court. In response to questions from the court, each of the parties also submitted a brief status report on the impact of the decision in *Pacificorp Capital, Inc. v. United States*, 25 Cl.Ct. 707 (1992), *aff'd* 988 F.2d 130 (Fed.Cir.1993).

The court believes no oral argument is required. Moreover, the parties specifically were invited to file additional briefs, after which the court indicated it would set the oral argument. Neither party filed a supplemental brief at that time, and neither party has requested oral argument.

### FACTS

The material facts necessary to decide defendant's motion for summary judgment are undisputed in the record.

On February 27, 1987, K.I. Sawyer Air Force Base (AFB) in Michigan issued Solicitation No. F20613–87–B0004 for the purposes of painting interior walls and maintenance of hardwood floors in military family housing on the base. Prior to award of the contract, on April 22, 1987, Amendment No. 0002 was issued.[4] In pertinent part, Amendment No. 0002 deleted the "Requirements" provision in Clause 96. Amendment No. 0002 also established a minimum ordering quantity for the contract of $5,000.00.[5] According to the uncontroverted declaration of William N. Rowe, the contract administrator, Rice Lake acknowledged Amendment No. 0002 when it submitted its bid on May 5, 1987.

On June 3, 1987, the Air Force awarded contract F20613–87–D0015 to Rice Lake. The contract term began on June 19, 1987 and continued through December 31, 1987. The contract contained Clause 99, "Indefinite Quantity," pursuant to FAR 52.216.22 (1984). The indefinite quantity clause provided as follows:

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantity of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause.[6] The Contractor shall furnish to the government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(c) Except for any limitations on quantities in the Delivery–Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall becompleted [sic] by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; *provided,* that the Contractor shall not be required to make any deliveries under this contract after *31 Dec. 87*.[7]

The contract also contained clause 73, "Termination for Convenience of the Government," pursuant to 48 C.F.R. 52.249–10 (1986).

---

**4.** The record, including the documents filed by defendant attached to its proposed findings of fact, does not include an Amendment No. 0001.

**5.** In the copy of the contract attached to defendant's proposed findings of uncontroverted fact, the accuracy of which was not contested by the plaintiff in its responsive filings, a line is drawn through clause 96, and the word "Delete" is written at the top of the clause, together with a notation which reads "see 0002."

**6.** Following the words "Ordering clause," the words "see clause # 97" are handwritten on the copy of the contract included in the documents which accompany the defendant's proposed findings of uncontroverted fact.

**7.** After the date "31 Dec 87," the words "see 0002" are handwritten on the copy of the contract included in the documents which accompany the defendant's proposed findings of uncontroverted fact.

Under the contract, the government was to order services by means of delivery orders. On June 19, 1987, during the term of the contract, the contracting officer issued a single blanket delivery order, F0613 87 F5049, for delivery during the period from June 19, 1987 through September 30, 1987. According to the delivery order, the scheduled deliveries, or "calls," placed by the government, could not exceed the maximum ordering quantity of $114,285.40. As already established in Amendment No. 0002, the calls could not be for less than the minimum ordering quantity of $5,000.00. The plaintiff was to receive a notice to proceed for each unit of work in the form of one copy of Call Documents/Job Orders issued by the Base Civil Engineer. Pursuant to the terms of the contract, the government made calls totalling $59,138.94 before terminating the contract. This total was more than eleven times greater than the minimum order of $5,000.00. Accordingly, the contractor was paid $59,138.94 under the contract.

Subsequent to the Job Orders issued above, it appears that the government conducted a cost comparison study in accordance with OMB Circular A-76. The cost study determined that interior painting and floor refinishing could be performed more economically in-house. In a response to a congressional inquiry, the Air Force reported the following facts, none of which were disputed by the plaintiff:

1. WE HAVE RESEARCHED YOUR INQUIRY ON BEHALF OF MR. HARLAN BADGE OF RICE LAKE CONTRACTING, INC., REGARDING THE STATUS OF HIS CONTRACT TO PAINT HOUSING INTERIORS AND MAINTAIN HARDWOOD FLOORS AT K I SAWYER AFB. HIS CONTRACT {F20613 87 D0015} IS AN INDEFINITE QUANTITY CONTRACT WITH DELIVERIES OF SPECIFIC SERVICES TO BE SCHEDULED BY PLACING ORDERS WITH THE CONTRACTOR. THE ESTIMATED CONTRACT VALUE WAS $160,000, AND THE GOVERNMENT WAS REQUIRED TO ORDER AT LEAST $5,000 PRIOR TO THE 31 DEC 87 EXPIRATION OF THE CONTRACT. WE HAVE DETERMINED PERFORMANCE BY THE GOVERNMENT WOULD BE MORE ECONOMICAL.

2. THE INITIAL DELIVERY ORDER (19 JUN-30 SEP 87) WAS FUNDED FOR A NOT TO EXCEED AMOUNT OF $114,000, AND RICE LAKE CONTRACTING INC., HAS BEEN PAID MORE THAN $59,000 FOR CALLS UNDER THAT ORDER, WHICH FULFILLED THE MINIMUM ORDER REQUIREMENTS FOR THE CONTRACT. DETACHMENT 29, 3904 MANAGEMENT ENGINEERING SQUADRON {SACMET} CONDUCTED A COST COMPARISON STUDY IN ACCORDANCE WITH OMB CIRCULAR A-76. AS A RESULT OF THAT STUDY, SACMET DETERMINED THAT INTERIOR PAINTING AND FLOOR REFINISHING COULD BE MORE ECONOMICALLY ACCOMPLISHED BY THE BASE CIVIL ENGINEERING HOUSING MAINTENANCE SHOP. THE CONTRACTING DIVISION IS NOW PREPARING A WRITTEN NOTICE TO RICE LAKE CONTRACTING, INC. TO TERMINATE THIS CONTRACT. THE PROPOSED TERMINATION WILL BE A TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT, AS PROVIDED IN THE TERMS OF THE CONTRACT. THE CONTRACT ADMINISTRATOR IS CURRENTLY ON TEMPORARY DUTY IN OHIO, BUT APPARENTLY ADVISED MR. BADGE OF THE PENDING TERMINATION IN ORDER TO MINIMIZE THE IMPACT.

Therefore, on September 30, 1987, the government verbally notified plaintiff of the termination of the contract. Termination documents followed, announcing that the termination, issued in accordance with clause 73 of the contract, was to take effect on October 1, 1987. On February 17, 1988, as a result of the termination, plaintiff submitted a letter in which it presented a claim for costs, totalling $55,623.65. On August 10, 1988, the contracting officer, Vincent Reed, offered plaintiff $3,759.20 in full settlement of plaintiff's claim, and denied the validity of the balance of plaintiff's claims. The contracting

officer stated that the government was "unable to offer any settlement on the remaining three areas which total $51,864.45 because you [Rice Lake] are not entitled to any reimbursement [sic] in these areas." The contracting officer offered the following reasons for denying portions of the plaintiff's claim:

3a. Para a of Contract Clause 99 states in part. 'This is an indefinite quanity [sic] contract'.... 'Quanities [sic] of supplies and services specified in the schedule are estimates only and not purchased by this contract.'

b. Para b of Contract Clause 99 states in part. 'The Government shall order at least the quantity of supplies or services designated in the Schedule at the "minimum".' That minimum figure as added to the solicitation in para J of Amendment 0002 was $5,000.00. Amendment 0002 at time of award was incorporated as a part of this contract.

c. As of this date, excluding the above offer, we have purchased services in the amount of $59,138.94 well above the $5,000.00 minimum you were guaranteed.

4. The Government had no requirement to issue any orders to you beyond those already issued. The termination for convience [sic] was basicly [sic] administrative in nature closing out a contract which we did not intend to use again. It was also advantageous to you in that it also diminished your existing bond obligations.

On October 4, 1988, plaintiff wrote to the government, stating that it considered the contracting officer to be in breach of its contract with plaintiff, and requested "a final decision." On October 11, 1988, the contracting officer responded to Rice Lake, denying plaintiff's claim in the amount of $55,623.65, informing Rice Lake of its intent to issue a final decision pursuant to the Contract Disputes Act and explaining the procedural requirements that a contractor claim certification must be submitted for a claim in excess of $50,000.00. Once again, the contracting officer offered $3,759.20 in settlement of the claim, but indicated that the offer to settle may be accepted by plaintiff, "until and unless such offer is withdrawn by the government in writing." On October 24, 1988,

plaintiff certified its claim in the amount of $55,623.65, and again requested a final decision. Subsequently, on November 15, 1988, the government acknowledged receipt of plaintiff's certified claim and withdrew its earlier settlement offer. The government stated, in pertinent part:

This will also provide notice that, upon reevaluation, I [the contracting officer] presently find no sound basis for the Government's assumption of any further cost liability relative to the contract beyond compensation made to date in the aggregate amount of $59,138.94. Consequently, the settlement proposal set forth in the communications referenced at paragraphs 1(a) and 1(c) above is hereby withdrawn.

On April 13, 1988, the contracting officer issued a final decision, denying plaintiff's claim with the exception of the issue of additional footages in the amount of $3,759.20, which the contracting officer sustained. Regarding the denials, the contracting officer concluded as follows:

3. The bases for the foregoing denial are as follows:

(a) Contract Clause No. 99 entitled Indefinite Quantity (FAR 52.216–22) (April 1984), at paragraph (a), provides as follows: "This is an indefinite quantity contract ... The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract." Accordingly, the Government is only obligated to purchase the services actually required and for which orders were placed under the contract. The Government is not obligated to pay for any materials acquired by you which may be in excess of those required to perform services actually required by the Government and ordered pursuant to terms of the Contract.

(b) The above reference Clause, at subparagraph (b), provides as follows: "... The Government shall order at least the quantity of supplies or services designated in the Schedule as the 'minimum'." The minimum stipulated in the Schedule (see Amendment 0002, 22 Apr 87, paragraph j) is as follows: "The Government shall order a minimum of $5,000.00." In fact, the Gov-

ernment has ordered and paid for services under the Contract in the amount of $59,-138.94, an amount well in excess of the contractually stipulated minimum. Accordingly, the Government has performed its obligations under the contract with respect to the ordering of stipulated minimum requirements, and is not obligated to pay for services neither ordered nor received· subsequent to the termination for convenience (1 October 1987–31 December 1987), and for which you have claimed consideration.

(c) Contract Clause No. 73 entitled "Termination for Convenience of the Government (Fixed Price) Alternate I (FAR 52.249–2) (APR 1984) expressly prohibits anticipatory profits.

After receipt of the contracting officer's final decision, plaintiff, Rice Lake, filed the above-captioned lawsuit in this court claiming damages in the amount of $55,623.55.

### DISCUSSION

■ Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[8] Both rules provide that summary judgment "... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) of the Rules of the United States Court of Federal Claims provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d

142 (1970); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.,* 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group v. United States,* 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assoc., Inc. Voluntary Employees' Beneficiary Ass'n. Plan Trust v. United States,* 20 Cl.Ct. 674, 679 (1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "... the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States,* 20 Cl.Ct. 222, 228–29 (1990).

■ When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *see, e.g., Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd,* 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or if the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judg-

---

8. In general, the rules of this court are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil procedure is relevant to interpreting the rules of this court, including Rule 56.

*See Jay v. Sec'y DHHS,* 998 F.2d 979, 982 (Fed. Cir.1993); *Imperial Van Lines Int'l Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 70 (1989).

ment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton industrial Products, Inc. v. Solid State Systems Corp.,* 755 F.2d 158, 163 (Fed.Cir. 1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assoc.,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assoc.,* 20 Cl.Ct. at 679. If under no scenario can the nonmoving party present the evidence to support its case, then there should be no genuine need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to demonstrate that a genuine issue for trial exists. *Id.*

In accordance with the standards of review articulated above, and after an examination of the submissions of the parties in the above-captioned case, this court finds that there are no material facts in dispute. The present dispute is ripe for summary disposition.

Based on the record, the issue before the court on summary judgment is one of contract interpretation. It is well settled that questions of contract interpretation are questions of law to be decided by the court, not questions of fact. *Interwest Construction v. Brown,* 29 F.3d 611, 614 (Fed. Cir.1994); *Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir. 1993); *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985); *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 386, 351 F.2d 972, 974 (1965). "This court must be guided by the well accepted and basic principle that an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless." *Fortec Constructors,* 760 F.2d at 1292; *see also United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir.1983); *B.D. Click Co. v. United States,* 222 Ct.Cl. 290, 297, 614 F.2d 748, 752 (1980). Contract language should be given the plain meaning which would be derived by a reasonably intelligent person acquainted with the circumstances. *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. at 388, 351 F.2d at 975; *see also A–Transport Northwest Co., Inc. v. United States,* 36 F.3d 1576, 1584 (Fed.Cir.1994); *C. Sanchez and Son, Inc. v. United States,* 6 F.3d 1539 (Fed.Cir.1993); *Firestone Tire & Rubber Co. v. United States,* 195 Ct.Cl. 21, 30, 444 F.2d 547, 551 (1971); *Haehn Management Co. v. United States,* 15 Cl.Ct. 50, 59 (1988), *aff'd without op.,* 878 F.2d 1445 (Fed. Cir.1989); *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 456, *aff'd.,* 785 F.2d 325 (Fed.Cir.1985). The general, and long accepted standard of contract interpretation is well articulated in *Firestone Tire & Rubber Co. v. United States,* 195 Ct.Cl. 21, 30, 444 F.2d 547, 551 (1971), as follows:

The rules of contract interpretation, which control the eventual disposition of this case, are well settled. As far back as the turn of the 19th century, it has been a fundamental precept of common law that the intention of the parties to a contract control its interpretation. [Citations omitted.] This bedrock of contractual analysis has withstood the test of time undiminished, and has attained an even greater

measure of significance in the complex field of Government contracts. [Citations omitted.] Both parties are presumed to be endowed with at least a modicum of business acumen.... This presumption has especial attachment to the drafting party who must bear the risk of any contractual uncertainty, ambiguity or inequitable consequence. [Citations omitted]. Unfortunately, though, the parties' long years of practical experience and vast technical resources too often bear nothing more fruitful than poor draftsmanship or contrived analysis. In any event, the language of a contract must be afforded the meaning derived from the contract by a reasonably intelligent person acquainted with the contemporary circumstances. [Citations omitted.]

In the instant case, plaintiff argues that the government was legally obligated to order the full complement of services under the contract. Further, plaintiff asserts that a failure to order the full complement of services under the contract constitutes a breach of that contract. Defendant, however, maintains that the contract was an indefinite quantity contract, thereby obligating the government to fulfill only the minimum quantity announced in the contract, in this case $5,000.00. Pursuant to Amendment No. 0002, defendant contends that once the minimum quantity provided in the contract was ordered, defendant's legal obligation was satisfied and defendant was not bound to order or pay Rice Lake for services beyond the minimum amount. Therefore, according to the defendant, the plaintiff is not entitled to damages.

■■■ Although plaintiff fails to articulate clearly the legal and factual basis for its claims in either the complaint or in its response to defendant's motion for summary judgment, an initial question for this court to decide is whether the contract at issue is a requirements contract or an indefinite quantity contract. The type of contract at issue, ultimately, will determine when the defen-

dant's legal obligation under the contract has been fully satisfied.[9]

The United States Court of Claims has defined both types of contracts. A requirements contract has been defined as:

'a contract in which the purchaser agrees to buy all of its needs of a specified material from a particular supplier, and the supplier agrees, in turn, to fill all of the purchasers needs during the period of the contract.'

*Mason v. United States*, 222 Ct.Cl. 436, 443, 615 F.2d 1343, 1346 (1980) (quoting *Media Press, Inc. v. United States*, 215 Ct.Cl. 985, 986, 566 F.2d 1192 (1977)).

An indefinite quantity contract, on the other hand, has been defined as follows:

a contract under which the buyer agrees to purchase and the seller agrees to supply whatever quantity of goods the buyer chooses to purchase from the seller. It differs from a requirements contract in that under a requirements contract the buyer agrees to purchase all his requirements from the seller. Under an indefinite quantities contract, even if the buyer has requirements, he is not obligated to purchase from the seller.

*Id.*, at 443 n. 5, 615 F.2d at 1346 n. 5.

■■■ While the buyer is not obligated to purchase all of its requirements from the seller in an indefinite quantity contract, it must purchase a minimum quantity in order for the contract to be enforceable. "With indefinite quantities contracts ... the buyer's promise specifically is uncertain, and such a contract would fail for lack of consideration if it did not contain a minimum quantity term." *Torncello v. United States*, 231 Ct.Cl. 20, 28, 681 F.2d 756, 761 (1982) (citing *Willard, Sutherland & Co. v. United States*, 262 U.S. 489, 43 S.Ct. 592, 67 L.Ed. 1086 (1923); *Mason v. United States*, 222 Ct.Cl. at 443 n. 5, 615 F.2d at 1346 n. 5; Gavin, *Government Requirements Contracts*, 5 Pub. Cont.L.J. 234, 240–44 (1972)). As further

9. Neither party claims that this is a definite quantity contract. A definite quantity contract contemplates a "fixed, definite quantity of goods or services be purchased and provided." *Ralph Constr., Inc. v. United States*, 4 Cl.Ct. 727, 731

(1984) (citing *Mason v. United States*, 222 Ct.Cl. 436, 443, 615 F.2d 1343, 1347 (1980)). As the present contract provides estimates only, the contract is clearly not a definite quantity contract.

explained by the United States Court of Claims:

> An indefinite quantity, open-end contract is used in a situation where the United States cannot estimate its needs except in terms of minimums and maximums; whereas a requirements contract by definition contains an 'estimated total quantity * * * obtained from the records of previous requirements and consumption * * *.' 32 C.F.R. § 3–409.2 (1975).

*Coastal States Petrochemical Co. v. United States,* 214 Ct.Cl. 520, 522, 559 F.2d 1, 6 (1977).

In order to determine if a contract was an indefinite quantity contract or a requirements contract, the court in *Torncello v. United States* looked to the following factors: (1) the text of the contract itself; and (2) the facts and circumstances which surround the formation of the contract at issue. *Torncello v. United States,* 681 F.2d at 760–761. The primary distinguishing characteristic described by the *Torncello* court was "whether it is implicit in [the contract] terms, or in the circumstances surrounding the formation of the contract, that the Navy promised to give all of its work authorizations to [plaintiff] or whether the Navy could use other contractors, too." *Id.* at 761. The court held that the contract at issue in the *Torncello* case was a requirements contract. The court noted that the contract did not contain an obligatory minimum quantity which the Navy was obligated to purchase, and that, therefore, it could not find an indefinite quantity contract because that contract would fail for lack of consideration. *Id.* The court explained:

> Without an obligatory minimum quantity, the buyer would be allowed to order nothing, rendering its obligations illusory and, therefore, unenforceable. Requirements contracts also lack a promise from the buyer to order a specific amount, but consideration is furnished, nevertheless, by the buyer's promise to turn to the seller for all such requirements as do develop.

> Such contracts clearly are enforceable on that basis. (citations omitted).

*Id.*

In the instant case, however, in order to persuade the court that the contract between plaintiff and the Air Force is an indefinite quantity contract, defendant cites to Clause 99 of the Rice Lake contract, which is a full text version of 48 C.F.R. § 52.216–22 (1986) In pertinent part, 48 C.F.R. § 52.216–22 provides:

> (a) This is an indefinite-quantity contract for the supplies or services specified ...
> (b) ... The Government shall order at least the quantity of supplies or services designated in the Schedule as the minimum.[10]

Moreover, Amendment No. 0002 to the instant contract specifically deletes Clause 96 titled "REQUIREMENTS," and inserts a minimum quantity amount, $5,000.00, into Clause 99 ("INDEFINITE QUANTITY)." Certainly, the specific inclusion of Clause 99 in the contract at issue, the specific deletion of Clause 96, the Requirements Contracts clause, and the insertion of a minimum quantity in the contract, as a result of Amendment No. 0002, indicates that the contract between plaintiff Rice Lake and the Air Force was an indefinite quantity contract. Furthermore, the conclusion that the contract at issue was an indefinite quantity contract is consistent with the guidance, discussed above, that a court should strive to give all parts of a contract reasonable meaning. Unless the instant contract is construed as an indefinite quantity contract, the totality of clauses included in the contract, particularly Clause 99 and Amendment No. 0002, as well as the notations on the contract language, specifically crossing out and deleting language, would be rendered meaningless. Moreover, according to *Mason v. United States,* "[t]he Guaranteed Minimum Quantity clause would be given legal meaning and serve a purpose only if these are indefinite quantities contracts." *Mason v. United States,* 615 F.2d at 1350.

Plaintiff has failed to direct this court to any language in the contract or in the regula-

---

10. FAR 16.505(e) provides, "[t]he contracting officer shall insert the clause at 52.216–22, Indefinite Quantity, in solicitations and contracts when an indefinite-quantity contract is contemplated."

tions to support an argument that the contract at issue should be construed as a requirements contract. In fact, plaintiff's complaint and brief are so weak that plaintiff even specifically fails to directly assert that the contract is a requirements contract or to offer any other plausible argument in support of its claims. Plaintiff's counsel cites only two cases in his brief opposition to defendant's motion for summary judgment, *Torncello v. United States*, 681 F.2d 756, and *Appeal of S & W Tire Services, Inc.*, GSBCA 6376, 82–2 BCA 16048, 1982 WL 8973 (1982). Although both of these cases deal with requirements contracts, he never, however, completes his argument. This court presumes, however, that plaintiff must interpret the contract at issue to be a requirements contract because the only cases cited by plaintiff in support of his complaint deal with an alleged improper termination and alleged breach of a requirements contract. Moreover, in order for plaintiff to argue that there has been a breach of contract, based on an allegedly improper termination for convenience, plaintiff must be relying on a theory that the contract it seeks to enforce is a requirements contract. In *S & W Tire, Inc.*, there was no dispute regarding the requirements nature of the contract at issue, and in *Torncello v. United States*, the court specifically concluded, based on the facts presented, that the contract before it was a requirements contract. *Torncello v. United States*, 681 F.2d at 762. In the instant case, however, plaintiff cannot make a showing, even under the *Torncello* case standards discussed above, that the contract it entered into with the Air Force is a requirements contract.

In the case at bar, there is nothing in the text of the contract or in the factual record which can be interpreted to indicate the existence of a requirements contract. The contract, which incorporates 48 C.F.R. 52.216–21, indicates, on its face, that the parties contemplated and executed an indefinite quantity contract. Because the court finds that the contract at issue is an indefinite quantity contract, the legal obligation of the government was only to satisfy the stated minimum in the contract. According to FAR 16.501, "Indefinite–Quantity contract limits the government's obligation to the minimum quantity specified in the contract." As indicated in *Mason v. United States:*

> If the contract contains such a minimum quantity clause, the buyer is required to purchase at least this minimum amount, but this is the extent of his legal obligation. He can purchase more if he chooses to but is under no obligation to do so.

*Mason v. United States*, 615 F.2d at 1346 n. 5. Consequently, if pursuant to an indefinite quantity contract, the minimum contract specifications have been met, then a breach of contract based on a termination by the government is impossible. In the instant case, the government exceeded the minimum quantity by eleven times the stated minimum. Therefore, this court concludes that because the government has satisfied its obligations under the contract at issue, there was no breach by the defendant. This plaintiff is not entitled to the damages claimed in the complaint.

## CONCLUSION

After careful review of the record before this court and the applicable law, the court concludes that defendant has met its burden of proof on summary judgment. The record demonstrates that the contract at issue is an indefinite quantity contract, and that the defendant has satisfied its legal obligations under that contract. Plaintiff has failed to meet its burden to demonstrate that it is owed the damages claimed in the complaint. For the reasons discussed above, defendant's motion for summary judgment is **GRANTED**. The Clerk of the Court is, hereby, directed to dismiss plaintiff's complaint and to enter judgment in accordance with this decision.

**IT IS SO ORDERED.**